UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------
IVAN BERMUDEZ, *et al.*,

                Plaintiffs,  **ORDER**

    -against-  CV 12-6245 (LDW) (GRB)

KAROLINE'S INTERNATIONAL
RESTAURANT BAKERY CORP., d/b/a
D&D DINER AND COFFEE SHOP, *et ano*.,

                Defendant(s).
-----------------------------------------------------------X

**Appearances:**

Matthew Marks, Esq.
White, Ricotta & Marks, P.C.
Counsel for Plaintiffs
86-12 37th Avenue, Second Floor
Jackson Heights, New York 11372

Eric Prusan, Esq.
Counsel for Defendants
200 Old Country Road, Suite 680
Mineola, NY 11501

**GARY R. BROWN, United States Magistrate Judge:**

    Recently, in *Palma v. NLRB,* 723 F.3d 176 (2d Cir. 2013), the Second Circuit determined that the Supreme Court's decision in *Hoffman Plastic Compounds, Inc., v. NLRB*, 535 U.S. 137 (2002) – which prohibited recovery of backpay awards under the National Labor Relations Act ("NLRA") by undocumented workers who had submitted fraudulent immigration documents to obtain employment – is "equally applicable to aliens who did not gain their jobs through such fraud but who are simply present in the United States unlawfully." 723 F.3d at 183. The Second Circuit's decision raises a question as to whether undocumented workers are precluded

from seeking backpay awards in actions, such as this one, brought pursuant to the Federal Labor Standards Act ("FLSA"), even in absence of immigration fraud on the part of the employee.

Before the Court is a motion to compel by defendants herein to obtain discovery on the issue of plaintiffs' immigration status. As set forth in greater detail below, while I express no opinion on the substantive issue as to whether *Palma* precludes recovery of a backpay award, in the wake of the Second Circuit's ruling, inquiry into plaintiffs' immigration status is reasonably calculated to lead to the discovery of admissible evidence. I further find that the potential chilling effect identified by plaintiffs' counsel – though a very real concern – is not sufficient to overcome defendants' right to obtain this information which is not only relevant, but potentially dispositive.

## BACKGROUND

As pertinent herein, plaintiffs worked in various capacities in a restaurant operated by defendants. *See generally* Complaint ("Compl."), Docket Entry ("DE") [1]. All plaintiffs claim to have worked six days per week, well in excess of eight hours per day, yet received somewhere in the area of five to six dollars per hour, irrespective of the number of hours worked. *Id.* at ¶¶ 22-24. They commenced this action pursuant to the FLSA and state labor laws, alleging that defendants failed to pay minimum wage, spread of hours, and overtime as required by New York law, and regulations and seeking to recover back wages, liquidated damages, interest, attorneys' fees and costs. *Id.* at ¶¶ 1, 17.

At an initial conference on July 31, 2013, in response to an inquiry by the undersigned about the potential effect of *Palma*, counsel for defendants indicated that defendants would seek discovery on the issue of plaintiffs' immigration status. Initial Conference Hearing

Record ("Hrg. Rec."), July 31, 2013, at 10:33-10:35.  Counsel for plaintiffs, in turn, stated that they would object to such discovery demands.  *Id.* at 10:34-10:35.  As such, a briefing schedule was set, and defendants filed a motion to compel.

In their motion, defendants represent that:

> upon information and belief, all of the plaintiffs were, at the time of their employment, undocumented aliens illegally in the United States without proper documentation allowing them to work.  As soon as they were asked to provide proof of their ability to legally work, they all quit and then decided to bring this action.

Defendants' Motion to Compel, DE [11] at 3.  Plaintiffs' counsel responds as follows:

> Plaintiffs do not concede for purposes of this motion, or this matter, that they are undocumented or out of proper immigration status.  Moreover, Plaintiffs reject Defendants' contention that they quit when asked to provide proof of their immigration status.

Plaintiffs' Response, DE [12] at 1 n.1.  Plaintiffs oppose the application and ask that defendants' motion be denied.  This opinion follows.

## DISCUSSION

In *Palma*, the Court of Appeals reviewed an order of the National Labor Relations Board (the "Board") denying petitioners – a group of undocumented bakery workers unlawfully discharged for engaging in protected labor activity – award of backpay based upon the decision in *Hoffman Plastic*.  *Palma,* 723 F.3d at 177.  The Court of Appeals expressly rejected petitioners' argument "that the Board erred in interpreting the majority opinion in *Hoffman Plastic* to apply to aliens such as petitioners, who had not procured their jobs through the use of fraudulent documentation."  *Id.*  In examining *Hoffman Plastic*, the Circuit began with the starting point of the Supreme Court's decision:

> "The National Labor Relations Board (Board) awarded backpay to an undocumented alien who has never been legally authorized to work in the United States. We hold that such relief is foreclosed by federal immigration policy, as expressed by Congress in the Immigration Reform and Control Act of 1986 (IRCA)."

*Palma,* 723 F.3d at 181 (quoting *Hoffman Plastic*, 535 U.S. at 140).  The Court of Appeals quoted the Supreme Court's observation that:

> "Congress has expressly made it criminally punishable for an alien to obtain employment with false documents. There is no reason to think that Congress nonetheless intended to permit backpay where but for an employer's unfair labor practices, an alien-employee would have remained in the United States illegally, and continued to work illegally, all the while successfully evading apprehension by immigration authorities."

*Id.* at 183 (quoting *Hoffman Plastic*, 535 U.S. at 149).  Faced with these observations, the panel in *Palma* concluded that:

> Although petitioners urge us to distinguish the present case from *Hoffman Plastic* because in that case Castro himself had violated IRCA, whereas the petitioners here did not present fraudulent documents, the *Hoffman Plastic* Court's discussion of the direct conflicts between IRCA and awards of backpay is equally applicable to aliens who did not gain their jobs through such fraud but who are simply present in the United States unlawfully.  The Court pointed out that awarding backpay would "not only trivialize[ ] the immigration laws," but would "also condone[ ] and encourage[ ] future violations."

*Id.* at 183 (alteration in original) (quoting *Hoffman Plastic*, 535 U.S. at 150-51).

Substantively, this case bears greater similarity to the dispute in *Madeira v. Affordable Housing Foundation, Inc.,* 469 F.3d 219 (2d Cir. 2006), in which the Second Circuit held that notwithstanding *Hoffman Plastic,* the IRCA did not preclude a compensatory award under state labor law to an undocumented worker injured on a job site.  However, *Madeira*, which focuses on the preemption of state law by the IRCA, expressly distinguishes *Hoffman Plastic* because "the Supreme Court sought to reconcile two *federal* statutes to ensure that one did not trench on the other." *Madeira*, 469 F.3d at 237 (emphasis in original).  Thus, because this case primarily involves the interplay between two federal statutes, the IRCA and the FLSA, *Madeira* appears inapplicable.  Moreover, the decision in *Palma* further provides that:

> The fact that Congress chose in IRCA not to impose criminal sanctions on undocumented aliens simply for working without authorization does not in any way suggest that

> Congress meant to allow the Board to encourage undocumented aliens to work by awarding them backpay; and this Court has previously interpreted *Hoffman Plastic* as foreclosing such awards. We are not persuaded to reach the opposite conclusion by cases such as *Madeira*, which ruled that IRCA did not preempt awards to undocumented aliens as compensation for personal injuries caused by an employer's negligence or misconduct. IRCA's focus is on violations of the immigration laws, not on workplace safety.

723 F.3d at 184.

The Eleventh Circuit has repeatedly held that *Hoffman Plastic* does not preclude FLSA backpay awards to undocumented aliens. *Lamonica v. Safe Hurricane Shutters,* 711 F.3d 1299, 1306 (11th Cir. 2013) ("*Hoffman* does not give us cause to reconsider whether the IRCA was intended to amend the FLSA by implication, removing undocumented aliens from its protection"); *Galdames v. N & D Inv. Corp.*, 432 F. App'x 801, 804 (11th Cir. 2011) ("we reiterate that illegal aliens are 'employees' covered by the FLSA"). By contrast, a Ninth Circuit dissent has interpreted *Hoffman Plastic* to preclude an award of backpay under Title VII, while the Fourth Circuit reached a similar conclusion in an *en banc* decision issued before *Hoffman Plastic*. *Rivera v. NIBCO, Inc.*, 384 F.3d 822, 823 (9th Cir. 2004) (Bea, J., dissenting) ("if plaintiffs do not have authorized immigration status, they are not entitled to be awarded back wages or wages they might have earned in the future from a job which they were incapable of holding, under our Immigration laws"); *Egbuna v. Time-Life Libraries, Inc.,* 153 F.3d 184, 186-88 (4th Cir. 1998) (en banc) ("A plaintiff is entitled to the above remedies only upon a successful showing that the applicant was qualified for employment").

Prior to *Palma*, district courts in this Circuit have consistently permitted backpay awards to undocumented workers under the FLSA, persuasively distinguishing *Hoffman Plastic*. *See, e.g.*, *Solis v. SCA Rest. Corp.,* 938 F. Supp. 2d 380, 399-402 (E.D.N.Y. 2013) (collecting cases and arguments).[1] Based on these authorities, courts generally denied defendants in FLSA cases

---

[1] One purportedly distinguishing factor relied upon by plaintiffs here – and in several case decisions – is the

the right to inquire into a plaintiff's immigration status. *See, e.g.*, *Uto v. Job Site Servs. Inc.,* 269 F.R.D. 209, 211 (E.D.N.Y. 2010) ("permitting inquiry into a party's immigration status, when not relevant, presents a danger of intimidation that would inhibit plaintiffs in pursuing their rights" (internal quotation marks and alterations omitted)); *Trejos v. Edita's Bar & Rest., Inc.,* 2009 WL 749891, at *1 (E.D.N.Y. 2009) ("whether plaintiffs had green cards or working papers . . .is not relevant to the question of whether plaintiffs are employees under the FLSA"); *Flores v. Amigon*, 233 F. Supp. 2d 462, 464 (E.D.N.Y. 2002) (holding, *inter alia*, that "the information is not relevant to defendant's defense"), *Zeng Liu v. Donna Karan Int'l, Inc.,* 207 F. Supp. 2d 191, 192 (S.D.N.Y. 2002) (same); *cf. Flores v. Albertsons, Inc.*, 2002 WL 1163623, at *6 (C.D. Cal. 2002) (FLSA plaintiffs' immigration status not subject to discovery "even assuming Plaintiffs' immigration status is somewhat relevant to Defendant's damages").

Subsequent to *Palma*, two judges in the Southern District of New York have found the decision inapplicable to FLSA cases. First, in *Alcoser v. A Spice Route Inc.,* 2013 WL 5309496 (S.D.N.Y. 2013), the court found that backpay awards under FLSA are "independent" of any violation of IRCA, and held that "*Palma* does not change that calculus." *Id.* at *2. Second, a magistrate judge, confronted with the precise discovery question raised here, determined that plaintiffs' immigration status was irrelevant and, hence, not subject to discovery, holding that plaintiffs' claim for backpay "is not controlled by *Hoffman* or *Palma*, and indeed the courts as well as the Labor Department have, with some consistency, viewed FLSA claims for such payment as unaffected by immigration status." *Marquez v. Erenler, Inc.*, 2013 WL 5348457, at

---

suggestion that "rather than thwart the IRCA, awarding backpay to undocumented workers under the FLSA furthers its aims, because if the FLSA did not apply to undocumented aliens, employers would have a greater incentive to hire illegal aliens with the knowledge that they could not be sued for violating minimum wage requirements." Plaintiffs' Response, DE [12] at 3 (internal quotations marks and citation omitted). However, it appears equally true that by precluding undocumented workers from obtaining backpay awards under the NLRA, the law has provided unscrupulous employers a greater incentive to hire such workers, as the employer could, with impunity, discharge such workers for engaging in protected labor activities.

*1 (S.D.N.Y. 2013).

Unfortunately, I cannot share the confidence expressed in *Alcoser* and *Marquez* about the state of the law following the decision in *Palma*. There are compelling bases, discussed in several cases cited above, to distinguish cases under the NLRA from those brought pursuant to the FLSA. However, at this preliminary stage – where the question is limited to the issue of discovery – there is sufficient uncertainty in the wake of *Palma* to suggest that discovery is warranted. Discovery may permit the parties to crystallize the issues and allow the district court, which will ultimately decide whether plaintiffs' immigration status may provide a defense to their claims for back pay under FLSA, to properly consider the issues.

The issues that may be explored here include whether, and under what conditions, defendants learned of plaintiffs' immigration status – assuming that one or more of the plaintiffs were undocumented workers. For example, based solely upon the skeletal factual assertions made by counsel, there may be an issue as to whether one or more of the plaintiffs presented false immigration documents, which may affect the application of law to this case.

Failure to permit such discovery may prevent defendants from raising the applicability of *Palma*, and create an issue that would effectively evade review. In *Rivera v. NIBCO*, 384 F.3d 822, four Ninth Circuit judges, dissenting from the denial of *en banc* review, observed that:

> Plaintiffs' immigration status is relevant in two respects: (1) under the Supreme Court's decision in *Hoffman*, unauthorized aliens are not entitled to backpay and frontpay damages under Title VII and (2) under the after-acquired evidence doctrine, plaintiffs are precluded from recovering backpay and frontpay damages for discrimination under Title VII, once an employer discovers that plaintiffs are unauthorized aliens, if the employer proves that upon discovery of the unauthorized alien status, the employer would have complied with the law and terminated the employee's employment. Indeed, the magistrate judge acknowledged that plaintiffs' immigration status was relevant to the litigation, but nonetheless issued a protective order prohibiting questioning into plaintiffs' immigration status on the ground that allowing defendant to so inquire would "unnecessarily chill legitimate claims of undocumented workers under Title VII." . . . By granting the protective order, the district court improperly denied defendant access to

relevant information and thwarted the settlement purpose of discovery.

*Id.* at 826-27 (Bea, J., dissenting) (footnotes omitted) (citing *Rivera v. NIBCO*, 364 F.3d 1057, 1062 (9th Cir. 2004)). Until the effect of *Palma* is further clarified, plaintiffs' immigration status has been rendered sufficiently relevant to a potential defense so as to require permitting discovery on the issue.

Plaintiffs' counsel cites the potential chilling effect of such inquiry on undocumented workers attempting to vindicate their rights under the FLSA. Plaintiffs' Response, DE [12] at 2-3 (citing *Amigon*, 233 F. Supp. 2d 462, 465 n.2 (E.D.N.Y. 2002) ("If forced to disclose their immigration status, most undocumented aliens would withdraw their claims or refrain from bringing as action such as this in the first instance")). It is a legitimate, though not uncontroversial, concern. *Compare Rivera*, 364 F.3d at 1064 ("the protective order was justified because the substantial and particularized harm of the discovery – the chilling effect that the disclosure of plaintiffs' immigration status could have upon their ability to effectuate their rights – outweighed NIBCO's interests in obtaining the information at this early stage in the litigation") *with Rivera*, 384 F.3d at 829 (Bea, J., dissenting) ("that unauthorized aliens fear the legal consequences of breaking the law ought not prevent defendants from proving that plaintiffs are not entitled to certain forms of relief").

The potential chilling effect may be mitigated here – at least in some part – by the availability of the Fifth Amendment privilege against self-incrimination. While it is true, as the Supreme Court observed, that "[f]or whatever reason, Congress had not made it a separate criminal offense . . . for an illegal alien to accept employment after entering this country illegally," *Hoffman Plastic*, 535 U.S. at 144-5 (internal quotation marks omitted), that does not mean that responding to the proposed discovery does not present a risk of self-incrimination.

Merely entering this nation illegally may result in criminal prosecution. *See* 8 U.S.C. §1325 (imposing criminal penalties for improper entry by alien); *Plyler v. Doe*, 457 U.S. 202, 205 (1982) ("Unsanctioned entry into the United States is a crime"). The privilege against self-incrimination may be asserted in a civil proceeding. *See, e.g.*, *Chavez v. Martinez*, 538 U.S. 760, 772 (2003) ("we have allowed the Fifth Amendment privilege to be asserted by witnesses in noncriminal cases in order to safeguard the core constitutional right defined by the Self-Incrimination Clause – the right not to be compelled in any criminal case to be a witness against oneself"). Notably, one petitioner in *Palma* asserted the privilege on the issue of immigration status, which led to an agreement not to contest the issue. *Palma*, 723 F.3d at 178. One risk to plaintiffs, of course, is that the court may draw an adverse inference from such invocation. *See Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976) ("the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them").

Balancing plaintiffs' right to proceed with their claims free from potential intimidation against defendants' need to defend against the pending claims is a delicate matter. Until the effect of the *Palma* decision is clarified, however, this court must attempt to accommodate the needs of all parties in the fairest manner possible. Permitting defendants to conduct the discovery sought while recognizing that plaintiffs may invoke the privilege against self-incrimination at the risk of facing a negative inference, provides an effective, if imperfect, solution to the problem.

## CONCLUSION

Based on the foregoing, defendants' motion to compel is granted. Defendants may, during the course of discovery herein, make reasonable inquiry into the immigration status of

plaintiffs at the times during which they were employed by defendants.

Dated: Central Islip, New York
November 21, 2013

SO ORDERED:

 /s/ Gary R. Brown
GARY R. BROWN
United States Magistrate Judge